UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NORCOLD, LLC,

    Plaintiff,

    v.

HILTON-SPENCERPORT EXPRESS, INC., et al.,

    Defendants.

Case No. 3:23-CV-645-CCB-SJF

## OPINION AND ORDER

This case arises from a multiple-vehicle collision on the Indiana toll road. On June 1, 2022, Defendant Chasen Thompson, an employee of Defendant Hilton-Spencerport Express, Inc. ("Hilton" and, together with Thompson, the "Defendants"), was driving a Hilton-truck when he allegedly crashed into a line of vehicles, including a vehicle driven by Mr. Eric Klein, an employee of Plaintiff Norcold, LLC ("Norcold"). Following the accident, Mr. Klein died, and Norcold has allegedly been paying wrongful death benefits to Mr. Klein's beneficiaries, including Mr. Klein's spouse and children. In Norcold's amended complaint for subrogation, it sued the Defendants for negligence and to recover for those amounts Norcold has paid to Mr. Klein's beneficiaries.[1] (ECF 18). Pending before the Court is Norcold's motion for summary

---

[1] The insurers for Hilton, Continental Western Insurance Company and Acadia Insurance Company, have also filed an interpleader action under 28 U.S.C. §§ 1335, 1397, and 2361 in this Court arising from the June 1, 2022 accident against several defendants/claimants, including Norcold, Hilton, and Thompson. *See Cont'l Western Ins. Co. v. Hilton-Spencerport Express, Inc.*, Cause No. 3:23-cv-631-CCB-SJF. The Defendants do not dispute that Norcold may separately pursue this lawsuit. An

judgment, arguing that there is no genuine issue of material fact that Thompson, while acting in the course and scope of his employment with Hilton, negligently caused Mr. Klein's death.[2] (ECF 34).

The Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). Based on the applicable law, facts, and arguments, Norcold's motion for summary judgment is denied.

## RELEVANT BACKGROUND

The following facts are largely not in dispute. Any disputed facts are either not material or will be addressed in the substantive analysis below.

Mr. Klein was employed by Norcold from 1999 until his death on June 1, 2022. (ECF 36-1). Norcold provided Mr. Klein, as part of his employment, a 2015 Jeep Cherokee. (ECF 36-1 at 1). On June 1, 2022, Thompson was operating a semi-tractor trailer registered to Hilton on the Indiana toll road. (ECF 36-5 at 3). A dash camera was installed on Thompson's semi-tractor and recorded a video of Thompson operating the tractor on June 1, 2022. (ECF 36-3 at 1). While driving on the toll road, Thompson approached multiple vehicles, including Mr. Klein's Jeep. (ECF 36-5 at 3-4).

---

interpleader action "restrains claimants from seeking to enforce against the insurance company any judgment obtained against its insureds, except in the interpleader proceeding itself." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967). The interpleader action is therefore only confined to the obligations of Continental and Acadia, and the allocation of their insurance proceeds. *See id.* The interpleader action does not prevent Norcold from pursuing this subrogation lawsuit against the Defendants.

[2] Norcold also moved for summary judgment as to damages, but withdrew that request in its reply. (ECF 51 at 9). The Court will therefore not address whether summary judgment is proper as to any damages.

Norcold presents a one-minute video from Thompson's tractor's dash camera that was recorded on June 1, 2022. (ECF 37). The video shows Thompson driving in the right lane of the highway approaching a line of vehicles that appear to be stopped or slowly moving in the right lane, and no vehicles in the left lane. The video then shows that Thompson, while driving in the right lane, hits what appears to be a grey vehicle, then a white vehicle. The video next shows Thompson, while still in the right lane, drive towards a black vehicle, which Norcold contends is Mr. Klein's Jeep.[3]

As Thompson is driving towards the black vehicle, the video next shows the front hood of Thompson's truck come up, which obstructs the dash camera for about six seconds. Once the hood comes down, the video shows Thompson hit the rear of a white semi-truck, then Thompson's tractor comes to a stop. The video does not show Thompson hitting the black vehicle, but it does show the black vehicle on fire in the left lane next to Thompson's stopped tractor. Mr. Klein died on June 1, 2022. (ECF 36-4). Following the accident, Thompson was convicted in Indiana state court of two counts of causing death when operating a vehicle with a schedule I or II controlled substance in the blood in violation of Ind. Code §§ 9-30-5-5(a)(2), and sentenced to a term of imprisonment. *State of Indiana v. Thompson*, Cause No. 71D08-2209-F4-000043.[4]

---

[3] The Defendants do not dispute that Thompson approached several vehicles, including Mr. Klein's Jeep, or that Mr. Klein died following the accident. The make and model of the black vehicle cannot be determined from the video, however it appears to be an SUV. The Defendants deny that the black vehicle is Mr. Klein's Jeep, but present no evidence in support of its general denial. Accordingly, under Local Rule 56(e)(2), the Court considers the fact that the black vehicle in the video is Mr. Klein's Jeep undisputed for purposes of ruling on this motion.

[4] The Court may take judicial notice of Thompson's criminal proceeding. *See Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983)

**STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*,

834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## ANALYSIS

Under Indiana law, negligence consists of three elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty and (3) injury to the plaintiff proximately caused by the defendant's breach." *Diocese of Fort Wayne S. Bend, Inc. v. Gallegos*, 203 N.E.3d 1080, 1084 (Ind. Ct. App. 2023). "A negligent act is the proximate cause of an injury if the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated." *Bader v. Johnson*, 732 N.E.2d 1212, 1218 (Ind. 2000). "Proximate causation is generally a question of fact and not amenable to summary judgment." *Anderson v. P.A. Radocy & Sons, Inc.*, 865 F. Supp. 522, 532 (N.D. Ind. 1994) (citation omitted).

A motorist owes a duty to "maintain a proper lookout, to use due care to avoid a collision and to maintain his semi under reasonable control." *Smith v. Beaty*, 639 N.E.2d 1029, 1032 (Ind. Ct. App. 1994). "[K]eeping a proper lookout has been defined to mean the duty to see that which is clearly visible or that which in the exercise of due care would be visible." *Id.* However "[t]he duty to keep a proper lookout and use reasonable care does not require a motorist to do the impossible to avoid a collision." *McDonald v. Lattire*, 844 N.E.2d 206, 214 (Ind. Ct. App. 2006).

Norcold argues that summary judgment is proper because there is no genuine issue of material fact that Thompson breached his duty of care by failing to keep a proper lookout and to take any action to avoid the accident. Norcold contends that the dashcam video shows Thompson breached his duty by failing to take evasive measures to avoid the collision, such as driving into the empty left lane or onto the right shoulder of the highway. In opposition, Defendants present an affidavit from Thompson stating that while traveling, he "observed a traffic warning sign indicating that the left lane would be closing," so he moved his vehicle to the right line. (ECF 46-3 at ¶ 3). Thompson states he then turned off the radio in his vehicle and adjusted the volume of the citizen's band radio so he could learn more information as to why the left lane was closed, that while adjusting the radio he "suddenly encountered a line of stopped cars in the right lane," and that "despite [his] observations of traffic and [his] surroundings, as [he] was trained to do as a commercial driver, [he] was not expecting to encounter a stopped line of cars." (*Id*. at ¶¶ 4-7). Thompson states that having observed the stopped cars, he "knew [he] would not have time to brake safely or effectively and, given the proclivities [of] the vehicle [he] was driving in terms of size and weight, [his] effort to veer to the right was unsuccessful," and he "collided with a vehicle in the right lane of eastbound I-80." (*Id*. at ¶¶ 7-8). The Defendants have therefore presented evidence to demonstrate the existence of a genuine issue of material fact as to whether Thompson breached his duty to keep a proper lookout and to use due care to avoid a collision.

The parties dispute the appropriateness of the so-called sudden emergency doctrine, but the doctrine is irrelevant to the instant issue of whether there is a genuine

6

issue of material fact as to whether Thompson breached his duty. As explained by the Indiana Supreme Court:

> In a negligence cause of action, the sudden emergency doctrine is an application of the general requirement that one's conduct conform to the standard of a reasonable person**. The emergency is simply one of the circumstances to be considered in forming a judgment about an actor's fault**. The doctrine was developed by the courts to recognize that a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal circumstances. The basis of the doctrine is that the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even though it later appears that the actor made the wrong decision, one which no reasonable person could possibly have made after due deliberation.

*Willis v. Westerfield*, 839 N.E.2d 1179, 1184-85 (Ind. 2006) (emphasis added).

The sudden emergency doctrine "does not relieve a motorist of his duty to maintain a proper lookout while operating a vehicle as a reasonably prudent person would do in the same or similar circumstances." *Linville v. Pressley*, 744 N.E.2d 974, 976 n.1 (Ind. Ct. App. 2001).  Rather, the doctrine "teaches that facts constituting an emergency are to be considered by the jury in determining whether the defendant's actions were reasonable under the circumstances." *Willis*, 839 N.E.2d at 1186. Under Indiana law, the Court is to instruct the jury on the sudden emergency doctrine only when there is evidence that "the actor seeking the benefit of the defense did not, through his or her own negligence, create the sudden emergency, (2) the appearance of danger was so imminent that the actor was left with no time for deliberation; and (3) the actor's apprehension of the peril was reasonable." *Lovings v. Cleary*, 799 N.E.2d 76, 78

(Ind. Ct. App. 2003) (finding no evidence that driver was confronted with a sudden event outside driver's contemplation, so the giving of sudden emergency instruction was not relevant to the issue of negligence before the jury).

Norcold relies on the Indiana Court of Appeals decision *in Linville v. Pressley* in which the Court noted in *dicta* that it was improper for the lower court to provide the sudden emergency instruction to the jury because there was no evidence that the driver—who approached stopped traffic in a construction zone—was confronted "with a sudden perilous situation such that he lacked time for deliberation." 744 N.E.2d at 976 n. 1. But the court did not make any finding as to whether there was evidence sufficient to find the driver was negligent—only that the giving of the instruction was an error. Whether there is a genuine issue of material fact as to a breach of a duty and the appropriateness of the sudden emergency doctrine instruction are separate issues with separate burdens. If at trial the Defendants present no evidence that Thompson encountered a sudden emergency and a jury is not instructed on the sudden emergency doctrine, a jury could nevertheless find that Thompson did not breach a duty of care to maintain a proper lookout and to avoid the collision. In finding that there is a genuine issue of material fact as to whether Thompson breached his duty of care, the Court need not resolve whether the Defendants have presented evidence to warrant the sudden emergency instruction at this stage.

Nor does Thompson's guilty plea to two counts under Ind. Code § 9-30-5-5(a)(2) alter the Court's determination. Under Ind. Code § 9-30-5-5(a)(2), it is a level 4 felony for a person to cause the death or catastrophic injury of another person when operating a

8

vehicle "with a controlled substance listed in schedule I or II of IC 35-48-2 or its metabolite in the person's blood." Ind. Code § 9-30-5-5(a)(2). To obtain a conviction under Ind. Code § 9-30-5-5(a)(2), "the State need not establish any negligent or reckless behavior on the driver's part, but only that the act of driving itself was the cause of a person's death." *Spaulding v. State*, 815 N.E.2d 1039, 1041 (Ind. Ct. App. 2004). And as the Defendants point out, a conviction under Ind. Code 9-30-5-5(a)(2) does not require a showing that the controlled substance actually impaired the person's driving ability, only that it was in the driver's blood. *See Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 24 (Ind. Ct. App. 2012) (discussing how there is "no accepted agreement as to the amount of controlled substances necessary to cause impairment."). Thus, because a conviction under Ind. Code § 9-30-5-5(a)(2) does not require a showing of negligence or recklessness, or that the controlled substance caused an impairment, Thompson's guilty plea does not conclusively establish that Thompson negligently caused the death of Mr. Klein.

## CONCLUSION

For the reasons discussed above, Norcold's motion for summary judgment as to the Defendants' liability (ECF 34) is **DENIED**.

SO ORDERED on February 24, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

9